UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOE MORGAN,<br>*Plaintiff*, | |
| v. | No. 3:18-cv-00653 (JAM) |
| THE GOLUB CORPORATION,<br>*Defendant*. | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Joe Morgan was employed as a bakery manager at a supermarket owned by defendant The Golub Corporation ("Golub") before he was fired in February 2017. He has filed this lawsuit against Golub alleging disability-related discrimination, failure to accommodate his disability, and retaliation for complaining about discrimination. Golub has now moved for summary judgment on all counts. I will grant the motion.

### BACKGROUND

The facts here are taken from both parties' Local Rule 56 statements of material fact, their submissions, and the pleadings, and they are presented in the light most favorable to Morgan as the nonmoving party.

Golub employed Morgan as a bakery manager at its Price Chopper stores in Newington, Vernon, then Southington, Connecticut. Doc. #17 at 4-6 (¶¶ 8-51) (Am. Compl.); Doc. #26 at 1 (¶¶ 1-3) (Local Rule 56(a)(1) Statement). Morgan's responsibilities included managing the bakery department, hiring new staff with the store manager's approval, ordering products, producing some baked goods, producing and decorating cakes in the cake decorator's absence, replenishing goods on the sales floor, and generally ensuring that the bakery was presentable. Doc. #26 at 1-2 (¶ 5); Doc. #26-1 at 15-16 (Morgan Dep.); Doc. #26-2 at 2-3 (Pappas Dep.).

1

Morgan was supervised by each store's manager, who was responsible for "all aspects" of the store and who has no set hours but is required to "stay until the store is right." Doc. 30-5 at 7 (Pappas Dep.).

In November 2015, Morgan injured his ankle. Doc. #17 at 5 (¶ 22). Although he did not ask for any ankle-related accommodations, he testified that management must have been aware of his pain because he was constantly limping and having a hard time getting around while at the Newington and Vernon stores. Doc. #26-1 at 32.

In April 2016, an assistant manager at the Vernon store asked Morgan why he kept nodding off during his lunch break, and Morgan explained that he had sleep apnea. Doc. #30-4 at 17 (Morgan Dep.). Morgan told the assistant manager that he had just seen a specialist and started using a CPAP machine, and she responded that he could not work the bakery because he might cause an accident, but he could do some paperwork that day. *Id.* at 18.

The Connecticut zone director Tim Frasier then required Morgan to undergo a drug test, which came back negative. *Id.* at 19; Doc. #30-9 (Drug Test Results). The store manager told Morgan that if he did not stop falling asleep on the job, he would be fired. Doc. #30-4 at 20. Morgan explained that his sleep apnea was a medical condition and that he has been seeing a doctor for treatment. *Ibid.*

In June 2016, Morgan was formally diagnosed with sleep apnea. Doc. #17 at (¶ 38). That same month, he took a leave under the Family and Medical Leave Act ("FMLA") in order to treat this condition. Doc. #26-4 (FMLA Form). In September 2016, he underwent a procedure to treat his left Achilles tendonitis and left Haglund's deformity. Doc. #31 at 2-3 (Orthopedist Visit Notes). The surgery itself went well, although Morgan's ankle became infected for almost two months after the surgery. Doc. #26-1 at 34.

In December 2016, after Morgan exhausted his FMLA leave, he received a letter from Golub that he could return to work if he had no restrictions, but otherwise he had to apply for extended leave or resign. Doc. #17 at 6 (¶ 49). Morgan produced a note from his orthopedist clearing him to return to work without restrictions, Doc. #26-3 (Orthopedist Note), although the orthopedist initially refused to write it, Doc. #26-1 at 12. His sleep specialist also wrote a letter clearing him to return to work. Doc. #26-1 at 35.

On January 9, 2017, Morgan returned to work and was placed at the Southington store. Doc. #17 at 6 (¶¶ 50-51). The store manager Damon Pappas was told by human resources that Morgan was returning from leave "at full capacity" with a "clean bill of health." Doc. #26-2 at 5. Pappas may have discussed Morgan's sleep apnea with him, *id.* at 6, but did not recall seeing Morgan limp on the job and was otherwise unaware that he had an ankle issue, Doc. #30-5 at 9.

Each store's labor budget is based on its sales. Doc. #26-1 at 6. Morgan testified that the Southington store was understaffed, although he had his maximum allowance of three full-time employees in his department as well as two or three part-time employees. *Id.* at 2-3. The store also had a full-time cake decorator, but Morgan was not surprised when she was soon fired for customer service issues. *Id.* at 3-5; Doc. #17 at 6 (¶ 53). Pappas "supposedly reached out to the zone director" to see if other stores' bakery departments had staff they could spare after the cake decorator was fired, but Morgan was unsurprised that there were none; he knew "all the other bakery managers" and "everybody was just as minimally staffed." Doc. #26-1 at 16.

Morgan was written up because the bakery department failed its "shrink audit" by 63% on February 1, 2017. Doc. #26-5 (Feb. 1 Incident). Morgan was suspended and given an action plan because he failed: (1) to sign his timecard or punch out on February 3; (2) to have a fire sale on doughnuts and bagels, wash the floors, and prepare artisan bread that evening; (3) to fill four

3

customer orders on February 4; and (4) to prepare the food court pizza dough for February 3 and 4. Doc. #26-6 (Feb. 3 and 4 Incidents).

Morgan returned from his suspension on February 8, 2017, and reviewed his action plan with Pappas, but Pappas complained to human resources that when Morgan left that day there was "[n]o list in the 24hr book for the closer, [] yet another special order not completed for our guest[, and a]lso, once again [Morgan] failed to fill out his time card for the day." Doc. #26-7 (Pappas Email).

On February 15, 2017, Pappas scored Morgan's action plan performance over the past week as a "fail" because he often "goes missing" for hours at a time, because there were "multiple statements" that he fell asleep in the restrooms and food court before and during shifts, because Pappas was "embarrassed" by the bakery department's performance, and because "[i]t's almost as if he doesn't even want to work" and "just doesn't care." Doc. #30-6 at 3.

On February 17, 2017, Morgan was suspended because, although he came in an hour early, his "doughnut/bagel guy" showed up several hours late, resulting in the case being filled at 8:30am instead of at 7:00am in violation of company policy. Doc. #26-1 at 22-24. The next day, on February 18, 2017, Golub terminated Morgan's employment. Doc. #26-8. Frasier and Pappas told Morgan it was because of his job performance. Doc. #26-1 at 18.

Morgan had been disciplined several times in the years preceding his termination. He was placed on an action plan from February to April 2015, Doc. #26-10; he was given a written warning for failure to stock bagels on time and properly sanitize in September 2015, Doc. #26-11; he was placed on another action plan from February to April 2016, Doc. #26-12; and he was given a written warning for failing to stock the bakery on time during that same period, Doc. #26-13. In response to the 2016 warning, Morgan decried that he "worked 68 hours this week

and still could not complete everything on [his] own," that he and his assistant "struggled" even after working overtime, and that "not just <u>anyone</u> can do everything." *Id.* at 2.

Morgan attempted to explain many of these incidents during his deposition testimony. He did not sign his timecard or punch out on February 3, 2017, because he "had somewhere to be that night," and "totally forgot and ran out the door." Doc. #26-1 at 41-42. Morgan may or may not have washed the floors that night or may have only washed half. *Id.* at 38. There is a "good possibility" he did not hold a fire sale because he was busy making bread and helping customers. *Id.* at 38-39. The department failed to fill three or four customer orders on February 4, 2017, while Morgan was driving to Storrs, Connecticut, that morning because "the company messed up" and failed to ship him enough bagels, and a subordinate did not follow his instruction to bake cakes. *Id.* at 18-19, 39-40. The pizza dough was not made that day until he returned. *Id.* at 41.

Morgan added that when he returned from his suspension the morning of February 8, 2017, the department was "in shambles," with the tables and cake case empty, and that Frasier held him accountable for this even though he had not been there for several days. *Id.* at 20-21. A week or two before Morgan was terminated, Pappas told the store's "hiring person" that "it was [a] 911 emergency that she hire at least four people for [Morgan's] department as soon as possible." *Id.* at 2. Morgan was able to interview and hire someone "immediately" the week he was terminated, "because they knew how badly [he] needed staff." *Id.* at 7.

Yet it was not enough according to Morgan. So he "tried working overtime" in order to bring the department out of disarray but was told overtime is "not allowed." *Id.* at 21-22. Golub often scheduled him to work alone or with only a part-time employee. Doc. #30-4 at 23.

5

Neither Pappas nor the other bakery staff were written up or placed on an action plan like Morgan was for the department's chaos. Doc. #30-5 at 13-14, 22-24. Morgan denies ever being found asleep in the store's restrooms. Doc. #30-4 at 21.

In April 2017, Morgan returned to his orthopedist and reported that his pain was much improved, complaining only about some irritation of his incision scar. Doc. #31 at 4. In his next job at an IGA supermarket, he did not request any accommodations for his sleep apnea because he felt nothing could accommodate the condition. Doc. #26-1 at 13-14.

In his amended complaint, Morgan alleges five claims: (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"); (2) failure to provide a reasonable accommodation in violation of the ADA; (3) retaliation in violation of the ADA; (4) disability discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA"); and (5) failure to provide a reasonable accommodation in violation of the CFEPA. Doc. #17. Golub now moves for summary judgment on all five claims. Doc. #25.[1]

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of

---

[1] Morgan also alleged in his amended complaint that he suffered from chronic back pain due to disc herniations. Doc. #17 at 5 (¶¶ 29-32). Golub argues that Morgan's back issue is not a disability. Doc. #25-1 at 20-21. Morgan does not respond to that argument in his opposition; he does not even discuss the back issue at all. Doc. #30. Therefore, I consider any claim related to Morgan's alleged back issue to be abandoned and will not discuss it further. *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016). Furthermore, Morgan clarified at the motion hearing that the only adverse employment action he is alleging is the termination of his employment. Therefore, I do not consider any other possible adverse employment actions.

the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close and contested issues of fact but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019).

### *ADA and CFEPA disability discrimination (Counts One and Four)*

Both the ADA and CFEPA prohibit discrimination on the basis of disability and apply the same legal framework to the discrimination analysis. *See Green v. Cellco Partnership*, 218 F. Supp. 3d 157, 162-63 (D. Conn. 2016); *Gil v. Dep't of Transportation*, 2018 WL 6264066, at *2 (Conn. 2018). The claims are subject to the familiar *McDonnell Douglas* burden-shifting standard. *See Cortes v. MTA New York City Transit*, 802 F.3d 226, 231 (2d Cir. 2015); *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013).

Thus, a plaintiff may establish a *prima facie* case for discrimination if he can show that: (1) his employer is subject to the ADA/CFEPA; (2) he was disabled within the meaning of the ADA/CFEPA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability. *See Green*, 218 F. Supp. 3d at 162. The Second Circuit has described a plaintiff's burden at this *prima facie* stage to be "not a heavy one" and "minimal." *McDonnell v. Schindler Elevator Corp.*, 618 F. App'x 697, 698 (2d Cir. 2015).

If the plaintiff succeeds in meeting this initial burden, then the employer may counter by proffering a legitimate, nondiscriminatory reason for its action. *See Cortes*, 802 F.3d at 231. Then, if the employer does so, the plaintiff may still succeed on his claim if he can show that the proffered reason was a "pretext" for discrimination—that is, by showing that his employer's

stated reason was untrue or incomplete and that it was discrimination that played a causal role in his termination. *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 157 (2d Cir. 2010); *see also DeAngelo v. Yellowbook, Inc.*, 105 F. Supp. 3d 166, 174-78 (D. Conn. 2015).

Golub does not contest that it is subject to the ADA and CFEPA, but it argues that Morgan's ankle issue was not a disability because it was not substantially limiting as a short-term injury, that he was not otherwise qualified, and that—in light of his poor job performance—there is no fact issue whether he was terminated because of his disability rather than because of his performance. Doc. #25-1 at 20-33. Morgan responds that his testimony as to his difficulty moving around shows the ankle issue was substantially limiting, that he was qualified because he could perform the essential functions of his job, and that he has shown causation because he was the only one ever disciplined for the condition of the bakery department. Doc. #30-1 at 13-20. He also argues that Golub's explanation for the termination is pretextual because Golub would not let him address the department's problems by working overtime and hiring more staff, often scheduled him to work alone, and singled him out for discipline for the condition of the department even though Pappas and his coworkers bore some responsibility. *Id.* at 20-22.

Even assuming Morgan has established a *prima facie* case of disability discrimination, I conclude that no reasonable jury could find that Golub's stated reason for firing him is pretextual. Morgan concedes that Golub did not permit him to work overtime or hire more staff for business reasons owing to the cost of labor rather than because of his disability. Indeed, Morgan clarified at oral argument that his theory of liability is more attenuated: a business that does not allow its overburdened employees to work overtime or hire more staff in order to accomplish their duties, whatever the reason for those policies, engages in disability discrimination if any of those overburdened employees is disabled. But this theory is wrong,

8

because the law requires a disability discrimination plaintiff not simply to show that he was disabled and subject to an adverse action but that he was subject to an adverse action *because* of his disability. *See, e.g.*, *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019).

Although Golub may have often scheduled Morgan to work alone or with only one other employee, the record does not support that this scheduling was connected to his disability. There is nothing to indicate that he or any other disabled employees were the only ones scheduled in this way, and the fact that Golub actually hired another employee to assist Morgan in the bakery department undermines Morgan's claim that Golub tried to set him up for failure by shorting him on staff.

Finally, Morgan faced discipline as the sole manager of the troubled bakery department. His responsibilities differed from his subordinates and his superior in Pappas, and he has not shown that they had disciplinary histories similar to or worse than his. Therefore, they cannot serve as comparators on which to base a claim of disparate treatment. *See Franklin v. Liberty Lines Transit, Inc.*, 685 F. App'x 41, 44 (2d Cir. 2017) (noting comparators need to be "similar in all material respects to permit a reasonable jury to draw an inference of pretext"). Accordingly, I will grant the motion for summary judgment as to the claims of disability discrimination under the ADA (Count One) and CFEPA (Count Four).

### *ADA and CFEPA failure to accommodate (Counts Two and Five)*

The ADA and CFEPA apply the same standard for claims of a failure to accommodate a disability. *See Martinsky v. City of Bridgeport*, 504 F. App'x. 43, 48 (2d Cir. 2012). A plaintiff may establish a *prima facie* case for failure to accommodate if he can show that: (1) he was disabled within the meaning of the ADA/CFEPA; (2) his employer is subject to the ADA/CFEPA and had notice of his disability; (3) he was otherwise qualified to perform the

9

essential functions of his job, with reasonable accommodation; (4) his employer has refused to make such accommodations; and (5) the failure to accommodate, his performance deficiencies, and the adverse employment action were connected. *See Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019); *see also Brown v. New York City Dep't of Educ.*, 806 F. App'x 45, 49 (2d Cir. 2020) (same).

Golub argues that it did not have notice of Morgan's disability because he never requested accommodation and was medically cleared to work. Doc. #25-1 at 34-36. Morgan does not deny that he failed to request an accommodation but responds that Golub was responsible for initiating the process of coming up with reasonable accommodations, which could have included hiring more staff, allowing Morgan to work overtime, and adjusting his hours around his sleep schedule given that Golub's stores are open twenty-four hours a day. Doc. #30-1 at 22-23. Golub replies that the proposed accommodations are not reasonable. Doc. #38 at 10-12.

A disabled employee is generally responsible for informing his employer that an accommodation is needed. *See Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020) (*per curiam*). But if the employer knew or reasonably should have known about the employee's disability, such as when the disability is "obvious," that employer must engage in an "interactive process" with the employee and "work together to assess whether [the] employee's disability can be reasonably accommodated." *Ibid.*

Here, no reasonable jury could find that Golub knew or reasonably should have known that Morgan had a disability that Golub was required to accommodate. It is undisputed that Morgan provided Golub with notes from an orthopedist and sleep specialist clearing him to return to work without restrictions. Golub was entitled to rely on those representations. *See Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir. 2003) (finding that "[employer] was

10

entitled to rely and act upon the written advice from [employee]'s physician" as to that employee's ability to work).

Although there may be scenarios where a reasonable employer would second guess a doctor's note if it was obvious the employee could not work without accommodation, that was not the case here. As to Morgan's alleged ambulatory difficulties, he testified only that he was seen limping at the Newington and Vernon stores, and Pappas claims never to have seen him limping at the Southington store after he returned from his FMLA leave. As to Morgan's sleep apnea, Pappas wrote in Morgan's performance review of February 15, 2017 that there were reports that he had fallen asleep in the store's restrooms and food court. But Morgan has denied that he ever fell asleep in the restrooms. Moreover, falling asleep on the job is hardly a shortcoming limited to persons with sleep apnea and, when paired with Morgan's medical clearance to return to work, was not sufficient to alert Golub that his condition was disabling.

Nor has Morgan established a genuine fact issue that there was a reasonable accommodation available. *See McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). He has not shown that it was reasonable to require Golub to extend his hours such that Golub would have to pay him overtime. *See Stephens v. Potter*, 2009 WL 2346771, at *7 (D. Conn. 2009). Nor has he shown that it was reasonable to require Golub to hire more staff to accommodate his disability. *See Stevens v. Rite Aid Corp.*, 2015 WL 5602949, at *13 (N.D.N.Y. 2015) (collecting cases), *aff'd in part, rev'd in part on other grounds*, 851 F.3d 224 (2d Cir. 2017).

It is also undisputed that an essential function of a bakery manager at Golub was to ensure that certain products, such as pizza dough, doughnuts, and bagels, were prepared and/or placed in their case by particular times of the day. Permitting Morgan to work whenever he was

not sleepy is not a reasonable accommodation in light of his essential and time-sensitive job functions. *See Gibson v. Henderson*, 129 F. Supp. 2d 890, 899 (M.D.N.C. 2001) ("[A]llowing an employee to take frequent unscheduled absences or to come and go as she pleases is not a reasonable accommodation."). Accordingly, I will grant the motion for summary judgment as to the claims of failure to accommodate under the ADA (Count Two) and CFEPA (Count Five).

### *ADA retaliation (Count Three)*

ADA retaliation claims are subject to the *McDonnell Douglas* burden-shifting standard. *See Pistello v. Bd. of Educ. of Canastota Cent. Sch. Dist.*, 808 F. App'x 19, 21 (2d Cir. 2020). Thus, a plaintiff may establish a *prima facie* case for failure to accommodate if he can show that: (1) he participated in a protected activity under the ADA; (2) his employer knew of the protected activity; (3) his employer took adverse employment action against him; and (4) a causal connection exists between the protected activity and the adverse employment action. *Ibid.* If the plaintiff meets this initial burden, then the employer can counter by articulating a legitimate, non-retaliatory reason for the adverse action. *Ibid.* If the employer does so, the plaintiff may still succeed on his claim if he can show that the proffered reason was a pretext for the action. *Ibid.*

Golub argues that Morgan did not engage in any protected activity, whether a request for reasonable accommodation or otherwise, and that even if Morgan had engaged in protective activity, he was not suspended or terminated because of such activity but rather because he could not do his job. Doc. #25-1 at 36-37. Morgan responds that his protected activity was requesting a FMLA leave and that a reasonable jury could find his termination was causally related to his request for leave because he was fired just six weeks after he returned to work in January 2017. Doc. #30-1 at 24-25. He also argues that Golub's explanation for the termination is pretextual for the same reasons he recited as to his disability discrimination claim. *Id.* at 25.

Morgan's claim fails because no reasonable jury could find that his termination was causally related to his request for a FMLA leave. Morgan had been repeatedly disciplined in 2015 and 2016 because of the condition of the department—well before he requested leave. He was disciplined again for substantially similar reasons during the intervening period between his return from leave and his termination. Under these circumstances, temporal proximity alone does not suffice to give rise to an inference of retaliation. *See Elliot-Leach v. New York City Dep't of Educ.*, 710 F. App'x 449, 452 (2d Cir. 2017) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.") (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)).

Even assuming Morgan has established a *prima facie* case of retaliation, he has again failed to demonstrate that Golub's stated reason for firing him is pretextual. Morgan does not dispute that his bakery department was in a state of disarray but blames its condition on understaffing, which he concedes was endemic across Golub's bakeries. Accordingly, because there is no genuine fact issue to support Morgan's retaliation claim, I will grant the motion for summary judgment as to the ADA retaliation claim (Count Three).

## CONCLUSION

In accordance with the foregoing, the Court GRANTS the motion for summary judgment. Doc. #25. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 31st day of August 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

13